IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ELIA CORONA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:11-CV-1856-N |
| § | |
| BAC HOME LOANS SERVICING, L.P., § | |
| and BAC HOME LOANS SERVICING, § | |
| L.P. f/k/a COUNTRYWIDE HOME § | |
| LOANS SERVICING, L.P., § | |
| § | |
| Defendants. § | |

# ORDER

This Order addresses Defendant Bank of America, N.A.'s ("BoA") motion for summary judgment [9]. For the reasons that follow, the Court grants the motion in part and denies it in part.[1]

---

[1] Corona has also moved for a continuance or an extension of time to respond to BoA's motion. Corona notes that she has only recently appointed her current counsel, and that her counsel has not had the opportunity to examine her prior counsel's file. Pl.'s Mot. to Continue [27] 1-2. The Fifth Circuit has held as follows:

> When the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgment range is exceedingly wide, for, in handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's.

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986). The Court is sympathetic to Corona and her counsel's situation. It is also mindful, however, that Plaintiff filed her case in state court on July 1, 2011, and that this motion for summary judgment has been pending for over a year. Furthermore, Corona was previously represented in this case by other counsel who were looking after her interests. Given these facts, and given the amount of time invested in the case and motion by counsel and Court alike, the Court denies Corona's motion to continue.

## I. THE CORONA-BOA[2] MORTGAGE AND FORECLOSURE DISPUTE

This case concerns a mortgage on Corona's house (the "Property"). On November 4, 2008, Corona executed a promissory note with Taylor, Bean & Whitaker Mortgage Company ("TBW") in the amount of $92,643 to purchase the Property. Def.'s App. to Def.'s Mot. Summ. J., Note [9-3] [hereinafter Note] 3. To secure the Note, Corona signed a deed of trust naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for TBW and its successors and assigns. Def.'s App. to Def.'s Mot. Summ. J., Deed of Trust [9-3] [hereinafter Deed of Trust or Deed] 6. The Deed also names MERS as the beneficiary under the Deed, and the Deed contains the right to foreclose and sell the Property. *Id.* at 6.

On October 25, 2010, MERS assigned the Deed to BoA, and BoA recorded the assignment in the official public records of Dallas County, Texas. *See* Def.'s App. to Def.'s Mot. Summ. J., Assignment, pp. 17-18 [9-3] [hereinafter Assignment]. The Assignment expressly stated that BoA had been assigned (1) the Note described in the Deed, (2) "the money due and to become due" under the Note and Deed, and (3) all of MERS's rights under the Note and Deed. *Id.*

Corona made payments on the Note through May 2009. However, on April 2, 2010, Corona requested a loan modification on the Note, Def.'s App. to Def.'s Mot. Summ. J., Decl. of Rayik Samara [9-3] [hereinafter Samara Decl.] 2, and she stopped making payments on the Note, *see id.* BoA asserts that it did not receive certain documentation that it had

---

[2]Plaintiff originally named as defendant BAC Home Loans Servicing f/k/a Countrywide Home Loans Servicing, L.P. ("BAC"). *See* Original Pet. 5 [1-4]. However, effective July 1, 2011, BAC merged into BoA. Def.'s Brief Supp. Def.'s Mot. Summ. J. 1 n.1 [9-1] [hereinafter Def.'s Br.].

ORDER – PAGE 2

requested in support of Corona's modification application and that it accordingly denied her request. *Id.* Corona disputes this version of events. She states that she hired a third party, American Processing Center, Inc. ("American") to assist her in the loan modification process. Pl.'s App. to Pl.'s Resp. to Def.'s Mot. Summ. J., Aff. of Elia Corona [28] [hereinafter Corona Aff.] 2. An American employee who assisted Corona, Antonio Caballero, maintains that American sent BoA the requested documents and that Corona is in fact qualified to receive a loan modification. Pl.'s App. to Pl.'s Resp. to Def.'s Mot. Summ. J,, Aff. of Antonio Caballero [28] [hereinafter Caballero Aff.] 2-3. Regardless of the disputed facts, BoA subsequently instituted nonjudicial foreclosure proceedings against Corona. *Id.*

On July 1, 2011, Corona filed suit in Texas state court, seeking an injunction preventing foreclosure, damages, and a declaration that "[BoA] must produce the one and only Original Promissory Note signed by [Corona] and or their document examiner prior to proceeding with foreclosure proceedings." Pl.'s Original Pet. ¶¶ 37, 40, 41-45 [hereinafter Petition].[3] She alleges causes of action for fraud and wrongful debt collection practices in violation of the Texas Debt Collection Practices Act ("DCPA"), TEX. FIN. CODE § 392.001, *et seq.*, Petition ¶¶ 20-26, and she argues that BoA "does not have the authority to foreclose

---

[3]Corona also filed an amended complaint [18] in addition to her original petition. Federal Rule of Civil Procedure 15 allows one amendment of a complaint as a matter of course within twenty-one days after filing the complaint or within twenty-one days after a defendant files an answer or a motion under Rule 12(b), (e), or (f), whichever is earlier. FED. R. CIV. P. 15(a)(1). BoA removed this case on August 1, 2011 and filed an answer on August 8, 2011. Corona did not file her amended complaint until December 5, 2011, well outside the windows allowed by Rule 15. Amendment of the Original Petition thus required BoA's written consent or the Court's leave. FED. R. CIV. P. 15(a)(2). Corona obtained neither, so the Court declines to consider the amended complaint.

ORDER – PAGE 3

on the property and [is] in fact not the actual holder[] of the original note," *id.* ¶ 9.  BoA now moves for summary judgment on all of Corona's claims.

## II. CORONA'S OBJECTIONS TO BOA'S EVIDENCE

In moving for or opposing summary judgment, a party must "cit[e] to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).  Corona objects to the declaration of Rayik Samara and to the supporting documents – including the Note and the Deed of Trust – that the declaration references.  Samara identifies himself as a litigation specialist for BoA.  Samara Decl. 1.

Corona first asserts that Samara "does not indicate having any knowledge, personal or otherwise, arising from any relationship with [TBW]." *Id.*  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602.  An affiant need not state affirmatively that his testimony is based on personal knowledge, but "a court must be able to reasonably infer personal knowledge from the affiant's position and the nature of . . . his participation in the matters to which he swore." *Am. Motorist Ins. Co. v. Southcrest Constr. Inc.*, No. 3:04-CV-2575-M, 2006 WL 995202, at *9 (N.D. Tex. Apr. 17, 2006) (Lynn, J.) (citing *DIRECTV v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005)).  Testimony may include inferences and opinions if they are "grounded in personal observation and experience." *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) (citing *United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir. 1994).  Samara states both that he is a records custodian for BoA

ORDER – PAGE 4

and that the Deed of Trust was transferred to BoA. Samara Decl. 1-2. Moreover, he expressly states that his statements "are based upon personal knowledge based on [his] review of [BoA's] . . . business records." Samara Decl. 1. Based on Samara's statements and personal observations, the Court finds that Samara's testimony is based on personal knowledge. The Court accordingly overrules Corona's first objection.

Corona next objects that Samara did not indicate how he came to know that the copies of the supporting documents attached to his declaration "are exact duplicates of the originals." Pl.'s Resp. 2. She contends that the statement is hearsay and conclusory. *Id.* Again, however, based on Samara's position at BoA and the review of the documents he states he performed, the Court finds the statement unobjectionable. The Court thus overrules Corona's second objection.

Third, Corona contends that Samara offers no testimony showing a connection between TBW and Samara or between TBW and BoA, and that this lack of connection means that the Note and the Deed of Trust are inadmissible under the business records exception to the hearsay rule. Regardless whether the Note and Deed are business records, they are not hearsay. "Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay." *See, e.g.*, *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (quoting THOMAS A. MAUET, FUNDAMENTALS OF TRIAL TECHNIQUES 180 (1988)). The Note and Deed, as legally operative documents, are thus admissible nonhearsay.

Finally, Corona objects to Samara's statement that Corona failed to respond to BoA's request for documentation, since Samara references no documents to support it. Pl.'s Mot.

ORDER – PAGE 5

2. A sworn declaration, however, is competent summary-judgment evidence. FED. R. CIV. P. 56(c)(1)(A). The Court thus overrules Corona's fourth objection.

### III. BOA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Courts, however, need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### *A. BoA Is Entitled to Summary Judgment on Corona's Fraud Claim*

In order to plead a fraud claim, a plaintiff must allege facts that show that (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the defendant made the representation with the intent that the plaintiff should act upon it, (5) the plaintiff acted in reliance on the representation, and (6) the plaintiff thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am. & Four Partners, LLC*, 341 S.W.3d 323, 337 (Tex. 2011) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)).

Corona contends that BoA made several false representations: that BoA would review Corona's application for a loan modification, that Corona did not need to make payments on her mortgage while a loan modification application was active, and that BoA would approve Corona for a modification. Petition ¶ 21. As to damages, she claims to have spent significant sums seeking loan modification and preventing foreclosure.[4] *Id.*

The statute of frauds bars claims for fraud like Corona's. Under the statute of frauds, as codified in the Texas Business and Commercial Code, an agreement for the sale of real property must be in writing to be enforceable. TEX. BUS. & COM. CODE § 26.01(b)(4). "Texas courts have applied this provision to loan modifications to hold that an agreement that contemplates the modification and/or extension of a lien or mortgage must be in writing."

---

[4]Because Corona claims these damages, BoA's argument that Corona has suffered no injury – and that her fraud claim thus fails as a matter of law – is unpersuasive.

ORDER – PAGE 7

*Salazar v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1309-L, 2012 WL 995296, at *3 (N.D. Tex. Mar. 23, 2012) (Lindsay, J.) (citing cases).  A fraud claim is subject to the statute of frauds when the plaintiff is using the fraud claim as an attempt to circumvent the statute of frauds.  *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 960 (Tex. App. – Houston [1st Dist.] 1995, writ dism'd w.o.j.) (citing cases).

> When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone.  In other words, a plaintiff's fraud cause of action is barred by the Statute of Frauds when he seeks to obtain the benefit of the bargain that he would have obtained had the promise been performed.

*Id.* (citing cases) (internal citations omitted).

If BoA had acted in accord with the alleged misstatements to which Corona points, BoA would have modified Corona's loan and would not have foreclosed on or threatened to sell the Property.  This is the benefit of the bargain Corona would have obtained had BoA performed on the alleged promises.  *See id.*  The injuries Corona claims – costs of pursuing modification and preventing foreclosure – flow from the fact that Corona did not in fact obtain that benefit and had to spend money in an attempt to gain it.  Corona thus effectively seeks to obtain the benefit of her bargain with BoA, and, pursuant to Texas law, the statute of frauds applies to, and bars, her claim.[5]  The Court accordingly finds that no genuine

---

[5] BoA also argues that the statute of frauds bars Corona's fraud claim because "an agreement which is not to be performed within one year from the date of making the agreement" must be in writing.  TEX. BUS. & COM. CODE § 26.01(b)(6).  "However, this provision of the statute of frauds is not applicable where the contract, from its terms, could possibly be performed within a year."  *Young v. Fontenot*, 888 S.W.2d 238, 241 (Tex. App. 1994 – El Paso, writ denied) (citing *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974)).  Had Corona repaid her loan per the schedule anticipated in the Note, it is true that she would have completed performance on December 1, 2038.  Note at 1.  The Note, however, grants Corona the right to prepay, Note at 2, so Corona could possibly have

dispute of material fact exists as to Corona's fraud claim and that BoA is entitled to summary judgment on that claim.

### B.  *BoA Is Entitled to Summary Judgment on Most of Corona's DCPA Claims*

Corona asserts that BoA violated the DCPA in three ways: by (1) attempting to collect on the Note without being able to prove itself the holder of the Note, Petition ¶ 22; (2) threatening to foreclose on the Property, thus being impermissibly coercive and threatening, *id.* at ¶ 23; and (3) impermissibly transferring, assigning, and misstating facts about the Note, *id.* at ¶ 24.[6]

Most of Corona's assertions as to how BoA allegedly violated the DCPA stem from one or both of two underlying arguments: that MERS did not have the legal ability to assign its interests to BoA, or – relatedly – that BoA did not have the legal ability to foreclose on

---

completed performance within a year.  This provision of the statute of frauds accordingly does not apply here.

[6]BoA argues that the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq*., preempts the DCPA.  The authority BoA cites for this claim, however, is inapposite.  In *Watters v. Wachovia Bank, N.A.*, the Supreme Court held that a national bank's mortgage business is not subject to individual states' "licensing, reporting, and visitorial regimes," since such regimes directly conflict with the NBA.  550 U.S. 1, 7, 13 (2007).  *Watters* goes on to note, however, that state law governs many aspects of national banks' business:
> Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA. For example, state usury laws govern the maximum rate of interest national banks can charge on loans, contracts made by national banks are governed and construed by State laws, and national banks acquisition and transfer of property are based on State law.

*Id.* at 1567.  The NBA does not provide banks with plenary authority to conduct their businesses in any way they see fit.  The DCPA, a generally applicable law, prohibits banks and others collecting debts from acting in harassing, coercive, and otherwise unconscionable ways.  Such prohibitions, unlike the regulations in *Watters*, do not conflict with provisions of the NBA.  The NBA thus does not preempt the DCPA.

ORDER – PAGE 9

Corona's home. The Court will address each of these underlying arguments before turning to Corona's specific contentions.

***1. The Assignment from MERS to BoA Was Valid.*** – MERS is the beneficiary of the Deed of Trust by that document's express terms. Deed of Trust 1. MERS is also, per the terms of the Deed, TBW's nominee. Deed of Trust 2. The Deed of Trust further expressly grants MERS, among other rights, "the right to foreclose and sell the Property; and to . . . assign[] this [Deed of Trust]." *Id.* Courts have consistently found that, under similar circumstances to these, MERS had not only the right to foreclose but also the ability to assign that right. *E.g.*, *Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *3 (N.D. Tex. July 7, 2011) (Fish, J.), *aff'd*, No. 12-10136, 2012 WL 4053793 (5th Cir. Sept. 14, 2012) ("[T]he deed of trust, on its face, grants MERS a right to foreclose upon Wigginton's default, a right Mellon acquired vis-á-vis MERS' transfer of its interest."); *Eskridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) (holding that "MERS was given the authority to transfer the documents in the Deed of Trust" when deed so stated); *Richardson v. CitiMortgage, Inc.*, No. 6:10CV119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (citing *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App. – Eastland 2010, pet. denied)) ("Under Texas law, where a deed of trust . . . expressly provides for MERS to have the power of sale, then MERS has the power of sale. . . . MERS had the authority to transfer the rights and interests in the Deed of Trust to [defendant]."). In line with these cases, the Court finds that the Deed of Trust gives MERS the right to foreclose on the Property and the ability to assign that right. MERS validly exercised this ability when it assigned to BoA the Note, the money due and to become

ORDER – PAGE 10

due under the Note and Deed, and all of MERS's rights under the Note and Deed. *See* Assignment 17.

*2. BoA Was Entitled to Foreclose on the Property*. – Plaintiffs challenge BoA's standing to foreclose without proving it was a valid holder of the Note as well as the Deed of Trust. Petition ¶ 22. Courts in this Circuit have consistently rejected the argument that foreclosure under a deed is invalid because the note and deed were originally split between a lender and MERS. Where "mortgage documents provide for the use of MERS[,] . . . the provisions are enforceable to the extent provided by the terms of the documents" – i.e., the language in the deed of trust controls. *Richardson*, 2010 WL 4818556, at *5; *see also, e.g.*, *Woods v. Bank of Am., N.A.*, No. 3:110-CV-1116-B, 2012 WL 1344343, at *5 (N.D. Tex. Apr. 17, 2012) (Boyle, J.); *Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *3 (N.D. Tex. Jan. 20, 2012) (Lynn, J.); *DeFranceschi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *4 (N.D. Tex. 2011) (Means, J.). It follows from this that "[i]n cases where MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by express language in the Deed of Trust, the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage," *James v. Wells Fargo Bank, N.A.*, No. 3:11-CV-2228-B, 2012 WL 778510, at *3 (N.D. Tex. Mar. 12, 2012) (Boyle, J.) (quoting *Eskridge*, 2011 WL 2163989, at *5) (internal quotation marks omitted); *see also, e.g.*, *Swim*, 2012 WL 170758, at *3 ("Under the express language of the New Deed of Trust, MERS is a beneficiary and nominee for both the originating lender and its successors and assigns, creating authority for a party holding only a deed of trust, and not the underlying obligation, to foreclose."). Accordingly, the fact that the Note and Deed

ORDER – PAGE 11

may have been "split" does not affect either MERS's right to foreclose under the Deed or MERS's right to assign its rights to BoA under the Deed. BoA thus had the right to foreclose on the Property.

***3. Most of Corona's Claims Under the DCPA Fail.*** – The above analysis dooms most of Corona's DCPA claims. Her first claim is that BoA violated the Texas Finance Code by attempting to collect on the Note without being a holder of the Note. BoA, however, attempted to foreclose under the Deed of Trust, not to collect on the Note. "Texas law differentiates between enforcement of a promissory note and foreclosure. Foreclosure enforces the deed of trust, not the underlying note. . . . Furthermore, Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011) (citing *Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App. – Corpus Christi 2002, pet. denied); *see also, e.g.*, *Torello v. Mortgage Elec. Registration Sys., Inc.*, No. 3:11-CV-0948-G, 2012 WL 1888134, at *3 (N.D. Tex. May 24, 2012) (Fish, J.); *Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at *2 (W.D. Tex. Apr. 26, 2011). As discussed above, BoA had the right to foreclose under the Deed of Trust, and no evidence supports the notion that it was attempting to collect under the Note, too. BoA is thus entitled to summary judgment on Corona's first DTPA claim.

Corona then contends that BoA threatened to foreclose on Corona, thus being impermissibly coercive and threatening under Texas Finance Code section 392.301. Petition ¶ 23. This statute prohibits debt collectors from "us[ing] threats, coercion, or attempts to coerce that employ any of [certain enumerated] practices." TEX. FIN. CODE § 392.301(a).

The Code further specifies, however, that it "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.* § 392.301(b); *accord, e.g.*, *Broyles v. Chase Home Fin.*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011) (Fish, J.). Because BoA had the contractual right to foreclose on and sell the Property without court involvement, it did not violate Texas Finance Code section 391.301. BoA is entitled to summary judgment as to this claim.

Corona's next assertion is that "[a]ll alleged transfers, assignments, and misstatements of facts regarding the Note" violate sections 392.303 and 392.304 of the Texas Finance Code, Petition ¶¶ 24, 26. Section 392.303 forbids "unfair or unconscionable means" of debt collection, and section 392.304 outlaws "fraudulent, deceptive, or misleading representation[s]" during debt collection that employ certain practices. The only transfer or assignment Corona points to is the Assignment – i.e., MERS's assignment of the Deed of Trust to BoA. Because the Assignment was valid, *see supra*, section III.B.1., there is no genuine dispute as to whether BoA violated either section of the Texas Finance Code with respect to its involvement with the Assignment. BoA is thus entitled to summary judgment as to this claim as well.

There is, however, a genuine dispute as to whether Corona would succeed at trial on her claim that BoA misstated facts with respect to Corona's application for a modification of her loan under the Note. Such misstatements might violate Texas Finance Code section 392.304(a)(19), the DCPA's "catchall" provision. Under this section, a debt collector may not "us[e] any other false representation or deceptive means to collect a debt or obtain

ORDER – PAGE 13

information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19). "In order for a statement by a party to constitute a misrepresentation under DCPA, Defendant must have made a false or misleading assertion." *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155, at *9 (N.D. Tex. 2012) (Boyle, J.) (citing *Narvaez*, 757 F. Supp. 2d at 632). The dispute in this instance concerns whether Corona qualified for a loan modification. BoA litigation specialist Rayik Samara states that Corona "failed to respond to [BoA]'s request for documentation in support of [Corona]'s loan modification request, and as a result, [Corona]'s loan modification request was denied." Samara Decl. ¶ 6. BoA, however, includes no documentary evidence in support of Samara's statement. American employee Antonio Caballero, who assisted Corona in applying for a loan modification, disputes BoA's version of the facts. According to Caballero, American delivered to BoA all the documents BoA requested. Caballero Aff. 2. Caballero further states that Corona, contrary to BoA's conclusion, qualified for a loan modification under the federal Home Affordable Modification Program. *Id.* at 3. Given that a loan modification would have given Corona the chance to avoid foreclosure, the factual dispute as to whether she qualified for a modification is material. Given that both sides have submitted contradictory evidence, the Court holds that a genuine dispute of material fact exists. *See Olabisiomotosho*, 185 F.3d at 525. Accordingly, BoA is not entitled to summary judgment on this issue.[7]

---

[7]Corona also seek to recover for BoA's alleged violations of DCPA under the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.50(h). *See* TEX. FIN. CODE § 392.404 ("A violation of this chapter is a deceptive trade practice under [DPTA]."). However, Corona is not a "consumer" under the DTPA; therefore, she cannot recover under the statute. To pursue a claim under the DTPA, even through a tie-in statute such as DCPA, a plaintiff must be a "consumer" as the DTPA defines it. *See, e.g.*, *Mendoza*

### *C. Corona Is Not Entitled to Declaratory Judgment*

Corona requests the following declarations: that (a) any attempt to foreclose is an action to collect a debt and, therefore, that BoA must produce Corona's original notes to Corona prior to proceeding with foreclosure; (b) BoA acted unconscionably toward Corona; and (c) BoA's conduct constitutes fraud, negligence, and intentional misrepresentation. Petition ¶ 27-29.

---

*v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App. – San Antonio 1996, no writ); *Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27-29 (5th Cir. 2010) (rejecting argument that DTPA's tie-in provision does not require "consumer" status); *Swim*, 2012 WL 170758, at *6; *Marquez v. Fed. Nat'l Mortg. Ass'n*, No. 3:10-CV-02040-L, 2011 WL 3714623, at *5-6 (N.D. Tex. Aug. 23, 2011) (Lindsay, J.); *Broyles*, 2011 WL 1428904, at *3-4. The question of whether one is a consumer under DTPA is a question of law for the court to decide, *e.g.*, *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App. – San Antonio 2002, pet. denied); *Mendoza*, 932 S.W.2d at 608.

DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services," TEX. BUS. & COM. CODE § 17.45(4); *see also, e.g.*, *First State Bank v. Keilman*, 851 S.W.2d 914, 928 (Tex. App. – Austin 1993, writ denied), and it defines "goods" as "tangible chattels or real property purchased or leased for use," TEX. BUS. & COM. CODE § 17.45(1). Accordingly, a person who buys a home or property may be a consumer under DTPA because that home or property qualifies as a "good." *See, e.g.*, *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984); *Broyles*, 2011 WL 1428904, at *4 (citing *La Sara Grain*, 673 S.W.2d at 567; *Maginn v. Norwest Mortg. Corp.*, 919 S.W.2d 914, 929 (Tex. App. – Austin 1996, no pet.)). But the home or property must form the basis of the complaint, not the security instrument – that is, "where, as in this case, . . . the servicing or administration of the loan is merely incidental to a plaintiff's prior objective to purchase a residence, such events do not bestow consumer status upon the plaintiff for purposes of the DPTA." *Woods*, 2012 WL 1344343, at *7; *see also, e.g.*, *Maginn*, 919 S.W.2d at 929; *Manno v. BAC Home Loans Servicing, LP*, No. A-11-CA-347 LY, 2011 WL 3844900, at *5 (W.D. Tex. Aug. 26, 2011) ("[A]t the time of the acts of which he complains, [plaintiff] already owned the house subject to the Bank's mortgage interest. As a matter of law, [plaintiff's] real property is not the basis of his complaint. Thus, [plaintiff] does not qualify as a 'consumer' under DTPA and does not have standing to bring a DPTA claim.").

ORDER – PAGE 15

BoA is entitled to summary judgment on all of these claims. First, an attempt to foreclose under a deed is not an attempt to collect on a note. *See supra* section III.B.3. Thus, there is no genuine issue of material fact as to whether under Texas law BoA was attempting to collect a debt: it was not.

BoA is also entitled to summary judgement on Corona's request that the Court declare BoA's actions unconscionable. Unconscionability is a contract doctrine that has no applicability to this case. *See generally* BARBARA SLOTNIK, 14 TEX. JURISPRUDENCE, CONTRACTS § 178 (3d ed. 2012) ("In general, the term 'unconscionability' describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms." (footnotes omitted)). There is thus no genuine dispute as to whether this claim is valid.

Finally, BoA is entitled to summary judgement as to Corona's request that the Court declare that BoA's conduct constitutes fraud, negligence, and intentional misrepresentation. Corona's fraud and intentional misrepresentation requests are redundant of her fraud claim. As such, the Court declines to consider these requests. *See Swim*, 2012 WL 170758, at *8 ("Plaintiff's request for declaratory judgment is redundant, and the Court declines to consider it." (citing *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) (Lynn, J.))); *Kougl v. Xspedius Mgmt. Co. of DFW*, No. 3:04CV2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (dismissing as redundant declaratory judgment claim seeking contract interpretation that court resolved as part of breach-of-contract action). And Corona has introduced no evidence to suggest that BoA's conduct was negligent. The

Court accordingly grants BoA summary judgment as to Corona's claim for declaratory judgment.[8]

## CONCLUSION

The Court grants BoA's motion to dismiss in part and denies it in part. Because there is a genuine issue of material fact as to whether BoA violated the DCPA when it denied Corona a loan modification, the Court denies the motion as to that claim. The Court grants the motion as to all other claims.

Signed September 25, 2012.

_____
David C. Godbey
United States District Judge

---

[8]In her Original Petition, Corona also applied to the Court for a temporary restraining order ("TRO"). The Court denied Corona's TRO application on December 6, 2011 [19].

ORDER – PAGE 17